UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICAELA OCHOA,

         Plaintiff,

   v.

SANTA CLARA COUNTY OFFICE OF
EDUCATION, et al.,

        Defendants.

Case No.16-cv-03283-HRL

**ORDER ON MOTIONS IN LIMINE**

Dkt. Nos. 58, 62, 63, 64

     Plaintiff Micaela Ochoa ("Ochoa") sues her former employer, the Santa Clara County
Office of Education ("SCCOE"), and its superintendent, Jon Gundry ("Gundry") (collectively
"Defendants"), for retaliatory termination in violation of her First Amendment rights and
California Labor Code Section 1102.5. This order addresses four motions in limine presented by
the parties.[1]

# I.      PLAINTIFF'S MOTION IN LIMINE NO. 2

     Ochoa seeks an order excluding Patty White and Richard Noack from testifying at trial.
White and Noack are both attorneys who served as outside counsel to SCCOE staff on labor and
employment issues. Ochoa argues that Defendants previously asserted attorney-client privilege as
to communications involving the two attorneys, and that Defendants are attempting to belatedly
raise an implicit advice of counsel defense. Defendants dispute the extent to which they claimed
privilege as to communications with White and Noack, and argue that White and Noack will
testify only to the non-privileged portions of their communications with Defendants. The Court
grants Ochoa's motion in part and denies it in part.

---

[1] The Court presumes that the reader is familiar with the facts of the case, which are discussed in
the Court's order on Defendants' motion for summary judgment. Dkt. No. 52.

During discovery, Defendants repeatedly asserted attorney-client privilege as to communications involving White and Noack.  Most notably, in March 2017, Defendants produced redacted e-mails between Philip Gordillo, SCCOE's human resources manager, and the two attorneys.  Defendants included a privilege log with the e-mail production.  After the close of fact discovery, however, Defendants proposed to call White and Noack as witnesses to testify to events leading up to Ochoa's termination, the preparation of Ochoa's termination letter, and, in the case of White only, SCCOE's response to Public Records Act requests.  Defendants then produced unredacted versions of the e-mails.

The attorney-client privilege attaches to confidential communications between an attorney and a client for the purpose of conveying or obtaining legal advice.  The privilege protects "the substance of the communications . . . not the fact that there have been communications." *United States v. Kendrick*, 331 F.2d 110, 113 (4th Cir. 1964).  While voluntary disclosure of part of a confidential communication can waive the privilege as to the rest of that communication, *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976), disclosing that a communication occurred and when it occurred does not constitute waiver, *Western United Life Assurance Co. v. Fifth Thrid Bank*, No. 02-C-7315, 2004 WL 2583916 (N.D. Ill. Nov. 12, 2004) ("Finding a partial disclosure and resultant waiver based on [an exchange revealing that a conversation occurred and a "terse" suggestion of the topic] would be tantamount to finding a waiver based on the mention and cursory description of a document in a privilege log.").

In *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001), the Ninth Circuit affirmed the district court's decision to preclude an advice of counsel defense where the defendant refused to answer questions regarding "relevant communications with counsel until the 'eleventh hour[.]'" *Columbia Pictures*, 259 F.3d at 1196. When the defendant later attempted to argue that he had relied on the advice of his attorney, the court was within its discretion to prevent the defendant from testifying to communications he had previously claimed were privileged.  *Id.*  "The privilege which protects attorney-client communications may not be used both as a sword and a shield."  *Id.* (citation omitted).

Here, to the extent that Defendants are offering the testimony of White and Noack as part

of an advice of counsel defense, the Court grants Ochoa's motion. Defendants did not properly assert this defense in their answer or their motion for summary judgment. Further, Defendants asserted attorney-client privilege as to much of the substance of the communications between Gordillo and White and Noack. Attorney-client privilege may not be used as a shield during discovery, and then a sword in the run-up to trial. *See Columbia Pictures*, 259 F.3d at 1196.

However, Defendants may present the non-privileged aspects of the communications between Gordillo and White and Noack (*i.e.*, the fact that the communications occurred, when they occurred, and the subject of those communications, as described in the privilege log). Defendants produced this information to Ochoa during discovery, and the timing of these communications is probative of Defendants' assertion that Ochoa's dismissal was not the result of retaliation.

To summarize the Court's ruling, Defendants may not offer the testimony of White and Noack as part of a belated advice of counsel defense. Further, White and Noack may not testify to the substance of their communications with Defendants (the previously-redacted portions of the March 2017 e-mail production). The two witnesses may testify only to the fact that the communications occurred, when they occurred, and the general subject matter of the communications.

## II.      DEFENDANTS' MOTION IN LIMINE NO. 2

Defendants seek to exclude evidence that Maribel Medina, SCCOE's former general counsel, accused Defendants of racial and gender discrimination in a separate lawsuit. The Court denies the motion, except as detailed below.

Defendants ended Medina's employment around the time Ochoa was dismissed. Defendants argue that Medina's claims are irrelevant to Ochoa's lawsuit, and that her testimony would confuse the jury and/or be unduly prejudicial. Additionally, Defendants argue that Medina's claims constitute improper character evidence.

Evidence of a wrongful act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R.

Evid. 404(b)(1). Evidence of a wrongful act may be admissible, however, to prove motive or intent. Fed. R. Evid. 404(b)(2). In cases involving alleged employment retaliation, courts have admitted "me too" evidence – evidence that other employees alleged that the defendant employer retaliated against them – as probative of the employer's retaliatory intent or motive. *See Moniz v. City of Delano*, No. 1:13-cv-00093-JLT, 2015 WL 128124 (E.D. Cal. Jan. 8, 2015). That said, a court may nonetheless exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403.

Evidence of Medina's claims against Defendants is character evidence, but it is probative of Gundry's retaliatory motive or intent. Specifically, her testimony regarding (1) alleged race- and gender-based discrimination she experienced, (2) Gundry's alleged violation of California Education Code § 35041.5, (3) Medina's complaints about (1) and (2), and (4) Gundry's termination of Medina's employment, is all admissible as "me too" evidence. That said, the probative value of the details of Medina's complaints concerning Gundry's racial discrimination – that Gundry asked Medina to say "si Señor" to him instead of "yes, sir," and that Medina alleges that Gundry treated her "like a Mexican day laborer instead of an attorney," Dkt. No. 84 – is substantially outweighed by a danger of unfair prejudice.

Therefore, Medina may testify, in general terms, about the racial- and gender-based discrimination she allegedly experienced, and to subsequent events (the fact of her complaints and termination). She will not, however, be permitted to describe the details of Gundry's alleged discriminatory acts.

As to Gundry's alleged violation of California Education Code § 35041.5, the Court does not wish to get embroiled in a mini-trial over whether Gunry violated the statute. Accordingly, Medina will be limited to providing a high-level description of her complaint and of Gundry's response (*i.e.*, that Gundry terminated her employment after she complained that he was violating the Education Code by hiring outside counsel when she thought it was not lawful to do so). Gundry will be limited to a brief denial of Medina's claims, at a similar level of generality.

### III.    DEFENDANTS' MOTION IN LIMINE NO. 3

Defendants seek an order precluding evidence of the specific details of Ted O's complaint to SCCOE Board Member Darcie Green in February 2015. Defendants assert that Ochoa merely passed on O's complaint, and that O's complaint is not relevant as it was not Ochoa's speech. Defendants also argue that O's complaint is improper character evidence.

Ochoa supervised O, and Gundry dealt with (and allegedly yelled at) both Ochoa and O in reference to the W-2 incident. Whether Ochoa complained to Green or merely passed along O's complaint is a question of fact for the jury that is not appropriately resolved through a motion in limine. In addition, Ochoa offers evidence of Gundry's actions during the W-2 incident not as character evidence, but as evidence of the circumstances that lead to Ochoa's alleged speech and the events that followed. Further, the specific details of O's complaint are relevant to whether Ochoa had "reasonable cause to believe" that the complaint to Green "disclose[d] a violation of state or federal statute." *See* Cal. Lab. Code § 1102.5.

Finally, O's expected testimony as to his level of fear of Gundry is relevant to whether Ochoa had reasonable cause to believe that the complaint to Green disclosed a violation of a statute. The probative value of O's expected testimony on this point does not seem to be substantially outweighed by a danger of unfair prejudice to Gundry. *See* Fed. R. Evid. 403.

Defendants' motion is denied.

### IV.    DEFENDANTS' MOTION IN LIMINE NO. 4

Defendants seek to exclude Golden Rule and "Reptile Theory" arguments at trial. Golden Rule arguments ask the jury to put themselves in the shoes of the plaintiff. Reptile Theory arguments target the primitive (reptilian) parts of jurors' brains by appealing to jurors' self-interest as to their safety and the safety of their community. Defendants seek an order precluding Ochoa from arguing that jurors should: (1) base their liability verdict on how jurors would have acted if they were in Ochoa's shoes; (2) base their damages award on the amount they would want for themselves; (3) deliver a verdict to make the community safer and/or to protect their own tax dollars; and (4) other golden rule or reptilian arguments.

It is improper for attorneys to appeal to jurors' self-interests as taxpayers and to imply that the jurors will be "personally or financially at risk" if they return a certain verdict. *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th 780, 797 (2004). Additionally, it is improper for counsel to ask jurors to place themselves in the plaintiff's shoes while calculating damages. *Neumann v. Bishop*, 59 Cal. 3d 451 (1976). Golden Rule arguments are not, however, necessarily improper when addressed to issues of liability or the reasonableness of a party's conduct. *The Guardian Life Ins. Co. of Am. v. Andraos*, No. CV 07-05732 SJO (FMOx), 2009 WL 10674144 (C.D. Cal. Sept. 10, 2009).

Accordingly, Defendants' fourth motion in limine is granted in part. Ochoa may not make Golden Rule arguments about damages, and may not appeal to jurors' self-interests in the verdict's effect on their own tax dollars. The remainder of Defendants' motion is denied. Defendants' request that Ochoa be precluded from making Golden Rule arguments as to liability is not supported by case law, and Defendants' request to exclude "reptilian" arguments does not seem to be implicated by this case. The Court denies these portions of the motion without prejudice to Defendants objecting to specific lines of questioning or arguments as they actually occur at trial.

**IT IS SO ORDERED.**

Dated: November 20, 2017

_____
HOWARD R. LLOYD
United States Magistrate Judge